# EXHIBIT 4

# LAW DICTIONARY

FOR THE

## USE OF STUDENTS AND THE LEGAL PROFESSION.

BY

### ARCHIBALD BROWN,

OF THE MIDDLE TEMPLE, BARRISTER AT LAW, M. A. EDIN. AND OXON.,
AND B. C. L. OXON.;
AUTHOR OF "THE RULE OF THE LAW OF FIXTURES," AND "AN EPITOME AND ANALYSIS
OF SAVIGNY'S TREATISE ON OBLIGATIONS IN ROMAN LAW."

WITH

### NUMEROUS ADDITIONS AND CORRECTIONS

AND AN

APPENDIX OF LEGAL MAXIMS AND OF ABBREVIATIONS USED IN
REFERENCE TO LAW BOOKS.

BY

### A. P. SPRAGUE,

COUNSELOR AT LAW.

---

ALBANY:
JOHN D. PARSONS, JR., LAW PUBLISHER.
1875.

**ALIAS WRIT.** This was a second writ issued after a former one had proved ineffectual. If the *alias* also failed, a third writ might have been sued out, which was called a *pluries*. These writs derived their respective names from the words occurring in their respective forms, viz., "*Sicut* alias *præcipimus*," "*Sicut* pluries *præcipimus*." Both forms of writ were abolished by the C. L. P. Act, 1852, s. 10, and what are called "concurrent" writs substituted.

**ALIBI** (*elsewhere*). This word signifies that mode of defense in a criminal prosecution which the accused party resorts to in order to prove that he could not have committed the crime with which he is charged, because he was in a different place at the time of the alleged commission.

**ALIEN**: *See* titles NATURALIZATION; ALLEGIANCE.

*** ALIEN AMY.** In international law, an alien friend; one who is the subject or citizen of a friendly power.

*** ALIEN ENEMY.** In international law, one who owes allegiance to the adverse belligerent.

**ALIEN PRIORIES.** These were cells of religious persons in England belonging to foreign monasteries. Most of them were dissolved by Act of Parliament in the reign of Henry IV., and some were converted into domestic priories.

**ALIENATION.** This is the power of the owner or tenant to dispose of his interest in real or personal property. With reference to personal property, the power appears to have always existed, subject only to certain difficulties in the mode of the alienation; but with reference to real property, the power was only slowly and gradually acquired.

**ALIMONY** (*alimonia*). That allowance which is made to a woman for her support out of her husband's estate when she is under the necessity of living apart from him. This provision is allowed the wife during the pendency of a suit between her and her husband, as well as to provide the wife with the means to obtain justice as for her ordinary subsistence. When there has been a sentence of divorce on the ground of the adultery and cruelty of the husband, the allowance for alimony becomes a permanent allowance, and is continued during the period of their separation. Upon an application for alimony, the court requires on the part of the husband a statement both of his casual and of his certain income to be set forth. See *Hakewill* v. *Hakewill*, 30 L. J. (M. & P.) 254; *Margetson* v. *Margetson*, 36 L. J. (M. & P.) 80; Bishop Marr. & Div. 600–619.

*** ALLEGATION.** A statement or declaration of a party to an action.

**ALLEGIANCE.** Otherwise called *ligeance*, is the obligation or *tie* existing between the sovereign and the subjects of any given state, and may be described as the lawful and faithful obedience and duty which the subjects of every state owe to the head of that state in return for the protection which the state affords to them. The learning on this subject will be found in *Calvin's Case* (*Calvin* v. *Smith*, 7 Rep. 1) 6 Jac. 1, and in the notes to that case in Broom's Const. Law. It is there said that allegiance is of four kinds, namely:
(1) Natural allegiance — that which arises by nature and birth;
(2) Acquired allegiance — that arising through some circumstance or act other than birth, *e. g.* by denization or naturalization;
(3) Local allegiance — that arising from residence simply within the country, for however short a time; and
(4) Legal allegiance — that arising from oath taken usually at the town or leet; for by the Common Law the oath of allegiance might be tendered to every one upon attaining the age of twelve years.

In *Calvin's Case* the point decided was that Calvin, although born in Scotland after the union of the crowns of Scotland and England in the person of James I., in 1603, was nevertheless a subject of the king of England, and as such capable of holding or of acquiring by descent lands in England, this decision, involving the further more general principle that allegiance to a sovereign is personal and not territorial, and that the maxim, *quando duo jura (imo duo regna) concurrunt in unâ personâ, æquum est ac si essent in diversis*, was inapplicable. That maxim does, however, apply in determining to what *laws* a person is to be subject.

According to the law of England, and also that of America, locality of birth determines the primary allegiance — a principle which is still adhered to in the

**Allegiance.** — (*Continued.*)

Naturalization Act, 1870; but according to the laws of most continental countries, the parentage of the parties determines their primary allegiance. However, by a series of statutes special provision has been made for the following classes of persons born abroad, all of whom are to be esteemed natural-born subjects, namely;

(1) Children inheritors of British parents, not merely for the purposes of inheritance (25 Edw. 3, st. 2), but for all other purposes also (*Doe* d. *Duroure* v. *Jones*, 4 T. R. 308; 7 Anne, c. 5; and 10 Anne, c. 5);
(2) Children of British fathers (4 Geo. 2, c. 21);
(3) Grandchildren, being the children of such latter children (13 Geo. 3, c. 21); and
(4) Children of British mothers (7 & 8 Vict. c. 66), but apparently only as to the estates in England (real or personal) of such mothers.

Aliens becoming permanently subjects of another country may become so either by denization in virtue of the king's letters-patent, or by naturalization in virtue of a particular Act of the Legislature, or in virtue of proceedings taken in pursuance of the general Act or Acts.

*See* titles NATURALIZATION; DENIZEN.

\***ALLIANCE.** In International Law, a treaty or league between states or powers for the purposes of offense or defense.

\***ALLISON.** The running of one vessel againt another, distinguished from *collision*, which signifies the running of two vessels against each other.

**ALLOCATUR** (*it is allowed*). After an attorney's bill has been examined or taxed by one of the masters, and the items which he disallows have been deducted, the remaining sum, certified by the master to be the proper amount to be allowed, is termed the *allocatur*. The *allocatur* is conclusive as to the amount of costs. 6 & 7 Vict. c. 73, s. 43; 23 & 24 Vict. c. 127.

**ALLODIAL LAND.** Land not held of any lord or superior, in which, therefore, the tenant has an absolute property and not an estate merely. The lands of the Anglo-Saxons were allod, but under the oath taken at Salisbury in 1087, all the

**Allodial Land.** — (*Continued.*)

lands in England became feudal, *i. e.*, held of some superior lord, and for an estate only.

*See* title FEUDAL TENURES.

\***ALLONGE.** In French law a piece of paper attached to a bill or note on which to make further indorsements, there being no room on the instrument itself. Story Prom. Not., §§ 121, 151.

**ALLOTMENT:** *See* title COMMON, INCLOSURE OF.

**ALLOTMENT, LETTERS OF:** *See* title COMPANY LAW.

**ALLUVIO.** This is defined to be a latent increase (*latens incrementum*), whereby something goes on adding itself, but it is impossible to say how much at any one moment is added. It is one of the natural modes of acquisition whereby property accrueth to one who is already the owner of the principal thing to which the accrual belongs. See Angell, Watercourses, § 53, *et seq.*

*See* title ACCESSIO.

**ALMANAC.** The almanac annexed to the Book of Common Prayer, subject to the alterations made in the calendar by the 24 Geo. 2, c. 23, is taken judicial notice of by the Courts of Justice. *Brough* v. *Perkins*, 6 Mod. 81. And the court will generally, to refresh its memory, refer to any almanac of received credit. *Page* v. *Faucet*, Cro. Eliz. 227.

**ALNAGE DUTIES.** These were duties payable on woollen cloths at so much per ell ( Fr. *aulne*); and the officer whose business it was to examine into the assize of woollen cloths was called the *alnager*. All such duties were abolished by 11 & 12 Will. 3, c. 20, s. 2.

*See* also title TAXATION generally.

**ALTARAGE** (*altaragium*). This word comprehends not only the offerings made upon the altar, but also all the profit which accrues to the priest by reason of the altar. When the altarage in part or in the whole was allotted to the vicar or chaplain, it meant only the customary and voluntary offerings at the altar for some divine office or service of the priest, and not any share of the standing tithes, whether predial or mixed. In the case of *Franklyn* v. *The Master and Brethren of St. Cross*, 1721, Bunb. 78, it was decreed that where *altaragium* is mentioned in old endowments, and supported by usage, it