# DECLARATION OF THU NGUYEN

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OCA- Asian Pacific American Advocates,** *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**Marco Rubio,** *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-00287 (TJK) |

**DECLARATION OF THU NGUYEN**

I, Thu Nguyen, declare under penalty of perjury that the following is true and correct:

1. I am over the age of 18 years old and am fully competent to make this declaration.

2. I am the Executive Director of OCA - Asian Pacific American Advocates ("OCA"), a position that I have held since November 1, 2021.

3. OCA is a membership-based organization with both national headquarters and local chapters. We are a plaintiff in this lawsuit because the Executive Order threatens both our members and our own interests in maintaining our mission.

4. OCA represents its members in this suit in good faith.

5. OCA's mission is to advance the social, political, and economic well-being of Asian Americans, Native Hawaiians, and Pacific Islanders ("AANHPIs"). Since our founding in1973, we have sought to provide a unified voice for Chinese Americans. We have expanded our

mission to reflect the growing diversity of the AANHPI population in the United States. We have welcomed new AANHPI immigrants into our membership and value their positive integration into American society. We advocate for the immigration rights of our members and the broader AANHPI community.

6. OCA has over 1,700 voting members who all pay dues. These members either join at large or join their local chapter, in which case their dues are split 50-50 between their local chapter and our national headquarters. Reflecting the mission of our organization, our membership includes noncitizens who are in the United States on many forms of temporary and nonimmigrant visas, including work or student status. Our noncitizen members have often been in the United States for long periods of time and plan to build a life here. Their future children would be deprived of birthright citizenship if the Executive Order is allowed to stand. These voting members also vote for their local chapter leadership, such as a board of directors and certain officers such as the President and Treasurer. The heads of local chapter in turn serve on our National Board, which sets the mission and policies of our organization. Local chapter presidents also elect 12 of our members to serve on the executive council.

7. In return for our members' active and robust participation through votes and dues, we – through our chapters - provide services and programming including education programs to further financial and legal literacy and personal wellness; mentorship and internship programs; trainings around civic advocacy; and immigration and naturalization assistance programs. . We also convene 250-300 members annually at our national conferences, where members have an opportunity to make social and professional connections across our 35 local chapters and affiliates, and invite 15 members to our annual leadership summit.

8. OCA often provides subgrants to individual chapters. These subgrants are one of our most important relationships with our local chapters (and members of those chapters) as we fund specific projects or initiatives that are important for the social and political development of that specific AANHPI community. OCA plays an important role in coordinating grant applications across as many as 10-15 chapters for individual grants, serving as the main organization when applying for both government and private funding.

9. Many of our chapters provide naturalization and citizenship application counseling and support. This furthers our mission by allowing our members to gain access to the important political, social, and financial benefits of U.S. citizenship. This work is critical to our mission of advancing the social, political, and economic well-being of Asian Americans, Native Hawaiians, and Pacific Islanders.

10. Allowing the Executive Order to take effect would affect OCA itself in a number of ways. For example, our local chapters would face a massive increase in demand for their naturalization and application services. Previously, OCA's local chapters provided such services to its non-US citizen members, but the U.S.-born children of such members had no need for assistance. Right now, the Order is not being implemented because of the other cases against it, but as soon as the Executive Order is upheld, we expect a substantial increase in requests for assistance with immigration services for U.S.-born children of our members. This, in turn, would require OCA to dedicate more resources to helping those chapters with policy guidance, including guidance at the state and local level to address implementation of the Executive Order. Supporting our chapters and members would require us to pull staff who are working on other important policy initiatives such as mental health and caregiving access or digital literacy and reallocate their time to creating and distributing this guidance to our chapters. We would likely not be able to hire

additional, dedicated staff for this work because funding for immigration work is extremely limited and is currently being reduced by both government and private sources. There is no specific funding that we know of for birthright citizenship-related advocacy, and our current funders do not focus on this issue, so we would be forced to do more work with the same amount of limited funds.

11. If OCA and our chapters cannot meet this increased demand, that harms our ability to fulfill our mission, which OCA sets at the national level and which chapters agree to work towards. Advancing the immigrant rights of AANHPI individuals is a core part of our mission, especially given the history of Asian migration to the US and our beginnings as an organization founded by Chinese immigrants.

12. Even if these consequences are short-lived or temporary, they will require a fast mobilization of our services, which drains our resources. It is impossible to know whether the affected members' children will ultimately have their legal status rectified and we currently do not have guidance for either our chapters or members on how they should approach getting birth certificates or other documents for their U.S.-born children who are subject to the Order. Creating such guidance and resources will require that we redirect funding and staffing from our other areas of work.

13. Although there is great fear among our noncitizen members that the Administration will retaliate and seek to remove individuals who step forward to fight this Order, I have been able to identify at least two members of OCA (Member A and her husband) who are willing to have their circumstances discussed in this lawsuit about how they would be directly affected by the Order. This couple belongs to the OCA-Greater District of Columbia chapter, which covers Washington, the District of Columbia, Maryland, and Virginia.

14. Member A gave birth to a child in the United States after February 19, 2025. Member A has nonimmigrant visa (J visa) status in the United States and is here for educational purposes. Her husband – the father of the child – is neither a U.S. citizen nor lawful permanent resident.

15. If the identity of either Member A or her husband were to be disclosed, OCA's associational rights would be significantly chilled. Other potential members would fear joining or associating with OCA if they knew that OCA could not protect the members it already has and disclosed their names to the government through this lawsuit. This would especially affect our local chapter presidents, who are often public figures in their community. Local chapter leadership and members of the national advisory council have already expressed fear and concern over being publicly associated with OCA while we are a named plaintiff in this lawsuit, and that they fear retaliation from the government. This makes it even more important that we protect any individual members who are affected by the Order and reassure our membership that they are safe with us. Otherwise, disclosure threatens OCA's protected associational activity by undermining our ability to recruit members to carry out our mission. We rely on deep relationships with our members to inform our mission and priorities and participate in our activities and events. In order for OCA to do effective advocacy, our members need to feel comfortable reaching out to us about issues they are encountering. Disclosing the members' names in this lawsuit would deter both them and our wider membership from communicating with us, each other, or their local chapters, making us less effective.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 26, 2026

_Thu Nguyen (Jun 26, 2025 15:08 EDT)_

Thu Nugyen