IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OCA – ASIAN PACIFIC AMERICAN ADVOCATES,<br><br>    *Plaintiff*,<br><br>  v.<br><br>MARCO RUBIO, Secretary of State, *et al.*,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-00287-TJK |

**BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

CHRISTOPHER J. HAJEC
D.C. Bar No. 492551
MATT A. CRAPO
D.C. Bar No. 473355
GABRIEL CANAAN
D.C. Bar No. 90025172
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## CORPORATE DISCLOSURE STATEMENT

Pursuant to LCvR 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute, whose mission is to defend responsible immigration policies in court, before administrative agencies, and before legislative bodies on behalf of the American people.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTEREST OF *AMICUS CURIAE* ......................................................................................... 1

INTRODUCTION ..................................................................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................ 2

ARGUMENT ............................................................................................................................. 2

    I.     To be "subject to the jurisdiction" of the United States under the Citizenship Clause, one must have permission to reside in the United States .............................. 3

         A.     To be within the allegiance and protection of the United States, one must have permission to reside here ......................................................................... 3

         B.     To be subject to the jurisdiction of the United States, one must be within the allegiance and protection of the United States .......................................... 6

         C.     *Wong Kim Ark*'s permission requirement was a holding of the Court ............ 7

    II.    Plaintiff's facial challenge is without merit ................................................................. 10

CONCLUSION ......................................................................................................................... 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

**Cases**

*AFSCME Council 79 v. Scott*,
  717 F.3d 851 (11th Cir. 2013) ..................................................................................10

*Ariz. Dream Act Coalition v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ......................................................................................1

*Elk v. Wilkins*,
  112 U.S. 94 (1884) ......................................................................................................6

*Fong Yue Ting v. United States*,
  149 U.S. 698 (1893) ........................................................................................... 4, 5, 7

*Franchise Tax Bd. of Cal. v. Hyatt*,
  587 U.S. 230 (2019) ....................................................................................................5

*Jackson v. Virginia*,
  443 U.S. 307 (1979) ....................................................................................................8

*Minor v. Happersett*,
  88 U.S. 162 (1874) ......................................................................................................5

*Plyler v. Doe*,
  457 U.S. 202 (1982) ....................................................................................................9

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
  490 U.S. 477 (1989) ....................................................................................................9

*Matter of Silva-Trevino*,
  26 I. & N. Dec. 826 (B.I.A. 2016) ..............................................................................1

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ....................................................................................................1

*United States v. Salerno*,
  481 U.S. 739 (1987) ..................................................................................................10

*United States v. Texas*,
  599 U.S. 670 (2023) ....................................................................................................1

*United States v. Wong Kim Ark*,
  169 U.S. 649 (1898) ..................................................................................... 2, *passim*

*Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*,
   50 F.4th 164 (D.C. Cir. 2022) ...............................................................................1

**Other Authorities**

Michael Abramowicz & Maxwell Stearns, *Defining Dicta*,
   57 Stan. L. Rev. 953, 1065 (2005) .......................................................................7

Exec. Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 29, 2025) .......................................1, 2

Amanda Frost, *"By Accident of Birth": The Battle over Birthright Citizenship After United States v. Wong Kim Ark*, 32 Yale J.L. & Human. 38, 47 (2021) ...................................6

Antonin Scalia, *ESSAY: The Rule of Law as a Law of Rules,*
   56 U. Chi. L. Rev. 1175 (1989) ...........................................................................8

*The Concise Oxford Dictionary of Current English* (7th ed. 1919) .................................4

U.S. National Archives & Records Administration, *Chinese Exclusion Act* ....................6

**Treatises**

Emer de Vattel, *The Law of Nations* bk. 1, ch. 19, § 213
   (Joseph Chitty trans., 6th Am. ed. 1844) .............................................................5

**Constitutional Provisions**

U.S. CONST. amend. XIV, § 1 .....................................................................................2

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law.[1] IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## INTRODUCTION

On January 20, 2025, President Donald J. Trump signed an executive order entitled "Protecting the Value of United States Citizenship" ("EO"). This order provides that:

> United States citizenship does not automatically extend to persons born in the United States: (1) when that person's mother was unlawfully present in the United States and the father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) when that person's mother's presence in the United States at the time of said person's birth was lawful but temporary (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa) and the father was not a United States citizen or lawful permanent resident at the time of said person's birth.

Exec. Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 29, 2025). It then directs the relevant federal agencies to "take all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order, and that no officers, employees,

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

1

or agents of their respective departments and agencies act, or forbear from acting, in any manner inconsistent with this order." *Id.* at 8449-50. Plaintiff filed suit alleging, *inter alia*, that the order, on its face, violates the Citizenship Clause of the Fourteenth Amendment. In response to Plaintiff's Complaint, Defendants have filed a motion to dismiss or in the alternative for summary judgment.

## SUMMARY OF ARGUMENT

Plaintiff alleges that the phrase "subject to the jurisdiction" as used in the Citizenship Clause excludes only children whose parents are "foreign diplomats" or "enemies within and during a hostile occupation." The Supreme Court has not interpreted the Citizenship clause so narrowly. In fact, the Supreme Court has held that only children born in the United States to parents who, at the time, were permitted to reside in the United States are citizens at birth by virtue of the Citizenship Clause of the Fourteenth Amendment. Thus, under controlling Supreme Court precedent, the EO is valid as applied in innumerable situations, such as to children of illegal aliens.

Even if the Court were to determine that Plaintiff has standing, Plaintiff cannot succeed in its facial challenge because the EO is valid as applied in numerous situations, and the Court should therefore dismiss its Complaint for failure to state a claim upon which relief can be granted.

## ARGUMENT

The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. CONST. amend. XIV, § 1. Contrary to Plaintiff's view, in the central Supreme Court case on birthright citizenship, *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), the Court held that, to have citizenship at birth under the Citizenship Clause, one must be born in the geographic confines of the United States to parents who, at the time of one's birth, had permission to reside in the United States.

2

**I.  To be "subject to the jurisdiction" of the United States under the Citizenship Clause, one must have permission to reside in the United States.**

*A.  To be within the allegiance and protection of the United States, one must have permission to reside here.*

At issue in *Wong Kim Ark* was whether a son born to Chinese subjects lawfully residing in the United States was a citizen at birth under the Citizenship Clause.  The Court found that he was, beginning its discussion in general terms:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The Amendment, in clear words and in manifest intent, includes the children born, within the territory of the United States, of all other persons, of whatever race or color, domiciled within the United States.  Every citizen or subject of another country, while domiciled here, is *within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States*.  His allegiance to the United States is direct and immediate, and although but local and temporary, continuing only so long as he remains within our territory, is yet, in the words of Lord Coke, in Calvin's Case, 7 Rep. 6a, "strong enough to make a natural subject, for if he hath issue here, that issue is a natural-born subject;" and his child, as said by Mr. Binney in his essay before quoted, "if born in the country, is as much a citizen as the natural-born child of a citizen, and by operation of the same principle."  It can hardly be denied that an alien is completely subject to the political jurisdiction of the country in which he resides—seeing that, as said by Mr. Webster, when Secretary of State, in his Report to the President on Thrasher's Case in 1851, and since repeated by this court, "independently of a residence with intention to continue such residence; independently of any domiciliation; independently of the taking of any oath of allegiance or of renouncing any former allegiance, it is well known that, by the public law, an alien, or a stranger born, for so long a time as he continues within the dominions of a foreign government, owes obedience to the laws of that government, and may be punished for treason, or other crimes, as a native-born subject might be, unless his case is varied by some treaty stipulations." Ex. Doc. H.R. No. 10, 1st sess. 32d Congress, p. 4; 6 Webster's Works, 526; United States v. Carlisle, 16 Wall. 147, 155; Calvin's Case, 7 Rep. 6a; Ellesmere on Postnati, 63; 1 Hale P.C. 62; 4 Bl. Com. 74, 92.

*Id.* at 693-94 (emphasis added).  The Court then added an important proviso, applicable to the particular facts of the case:

3

> Chinese persons, born out of the United States, remaining subjects of the Emperor of China, and not having become citizens of the United States, are entitled to the *protection of and owe allegiance* to the United States, *so long as they are permitted by the United States to reside here*; and are "subject to the jurisdiction thereof," in the same sense as all other aliens [lawfully] residing in the United States.

*Id.* at 694 (emphasis added) (citing, *inter alia, Fong Yue Ting v. United States*, 149 U.S. 698, 724 (1893)). *See, e.g., The Concise Oxford Dictionary of Current English* 825 (7th ed. 1919) (defining "so long as" as "with the proviso, on the condition, that"). Here, then, the Court held that persons such as Wong Kim Ark's parents—and thus children born to them in the United States—were within the allegiance and protection of the United States "so long as they are permitted by the United States to reside here"—meaning, provided that they were permitted to reside here.

One reason the Court added this proviso is that, at the time, other Chinese persons—laborers who had overstayed their permission to be in the country, or who failed to obtain requisite certificates of residence—were subject to deportation under the 1882 Exclusion Acts and its 1892 amendments, *Fong Yue Ting*, 149 U.S. at 724, and thus, for the Court, were not within the allegiance and protection of the United States. As the Court had put it in *Fong Yue Ting*, cited in the above passage:

> Chinese laborers, [] like all other aliens residing in the United States for a shorter or longer time, are entitled, *so long as they are permitted by the government of the United States to remain in the country*, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person or property, and to their civil and criminal responsibility.

*Id.* (emphasis added). Thus, for the Court, Chinese laborers and other resident aliens who were *not* permitted by law to reside in the United States were not "entitled . . . to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person or property, and to their civil and criminal responsibility." And, thus, unlike Chinese persons such as Wong Kim Ark's

4

parents, whose permission to reside here was undisputed, such aliens were not within the allegiance and protection of the United States. *Wong Kim Ark*, 169 U.S. at 694.

> As the Court in *Fong Yue Ting* further explained:
>
> By the law of nations, doubtless, aliens residing in a country, with the intention of making it a permanent place of abode, acquire, in one sense, a domicil there; and, *while they are permitted by the nation to retain such a residence and domicil, are subject to its laws, and may invoke its protection against other nations.* This is recognized by those publicists who, as has been seen, maintain in the strongest terms the right of the nation to expel any or all aliens at its pleasure. Vattel, lib. 1, c. 19, § 213; 1 Phillimore, c. 18, § 321; Mr. Marcy, in *Koszta's case,* Wharton's International Law Digest, § 198. See also *Lau Ow Bew* v. *United States,* 144 U.S. 47, 62; Merlin, Repertoire de Jurisprudence, Domicile, § 13, quoted in the case, above cited, of *In re Adam,* 1 Moore P.C. 460, 472, 473.

*Fong Yue Ting*, 149 U.S. at 724 (emphasis added). The cited-to selection of Emmer de Vattel's treatise *The Law of Nations,* which was highly influential on American jurisprudence, *Franchise Tax Bd. of Cal. v. Hyatt,* 587 U.S. 230, 239 (2019), describes these reciprocal duties:

> The inhabitants, as distinguished from citizens, are foreigners who are *permitted to settle and stay in the country*. Bound to the society by the residence, they are subject to the laws of the state while they reside in it; and they are obliged to defend it, because it grants them protection, though they do not participate in all the rights of citizens. They enjoy only the advantages which the law or custom gives them.

Emer de Vattel, *The Law of Nations* bk. 1, ch. 19, § 213 (Joseph Chitty trans., 6th Am. ed. 1844) (emphasis added). Indeed, the Court's holding continues to comport with common sense, since an illegal alien, subject to apprehension, detention, and removal at all times, can hardly be said to be within the "protection" of the United States, as the phrase "allegiance and protection" has always been understood. *See, e.g., Minor v. Happersett*, 88 U.S. 162, 165-66 (1874) ("The very idea of a political community, such as a nation is, implies an association of persons for *the promotion of their general welfare*. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection.") (emphasis added).

5

When the Court issued its ruling, no law prohibited aliens of any nationality other than Chinese from residing here. *See* Amanda Frost, *"By Accident of Birth": The Battle over Birthright Citizenship After United States v. Wong Kim Ark*, 32 Yale J.L. & Human. 38, 47 (Summer 2021); U.S. National Archives & Records Administration, *Chinese Exclusion Act*, https://www.archives.gov/milestone-documents/chinese-exclusion-act (last visited June 24, 2025). But, of course, even apart from *Fong Yue Ting*'s above generalization of the permission requirement to all resident aliens, it is wholly against the tenor of *Wong Kim Ark* to imagine that the requirement was only applicable to the Chinese—that only *Chinese* persons, if excluded, would be outside the allegiance and protection of the United States, while those of other nationalities who might be excluded, if Congress had passed a law excluding them, would somehow remain within the nation's allegiance and protection. Needless to say, the Court was far from observing any such distinction of race or nationality.

### B. To be subject to the jurisdiction of the United States, one must be within the allegiance and protection of the United States.

For the Court, being "subject to the jurisdiction" of the United States under the Citizenship Clause meant not merely being subject to the laws of the United States, but being subject to the nation's political jurisdiction, and "owing it direct and immediate allegiance." *Wong Kim Ark,* 169 U.S. at 680 (citing *Elk v. Wilkins*, 112 U.S. 94, 101-102 (1884)):

> The only adjudication that has been made by this court upon the meaning of the clause, "and subject to the jurisdiction thereof," in the leading provision of the Fourteenth Amendment, is *Elk* v. *Wilkins,* 112 U.S. 94, in which it was decided that an Indian born a member of one of the Indian tribes within the United States, which still existed and was recognized as an Indian tribe by the United States, who had voluntarily separated himself from his tribe, and taken up his residence among the white citizens of a State, but who did not appear to have been naturalized, or taxed, or in any way recognized or treated as a citizen, either by the United States or by the State, was not a citizen of the United States, as a person born in the United States, "and subject to the jurisdiction thereof," within the meaning of the clause in question.

6

> That decision was placed upon the grounds, that the meaning of those words was, "not merely subject in some respect or degree to the jurisdiction of the United States, *but completely subject to their political jurisdiction, and owing them direct and immediate allegiance*."

*Id.* at 680 (emphasis added). Thus, for the Court, being subject to the jurisdiction of the United States required "owing" the United States "direct and immediate allegiance." Quite obviously, those outside the allegiance and protection of the United States altogether—such as excluded Chinese laborers then, or illegal aliens today—cannot be said to meet the requirement of owing the United States "direct and immediate allegiance." Therefore, they cannot be "subject to the jurisdiction" of the United States under the Citizenship Clause.

### C. *Wong Kim Ark's permission requirement was a holding of the Court.*

Not to regard the Court as holding permission to reside in the country to be a prerequisite for being subject to the jurisdiction of the United States for Citizenship Clause purposes would be to truncate the reasoning the Court gave for its judgment, ignore the precedents it cited, and make nonsense of its opinion. For example, the Court would then have left open the possibility (which it explicitly foreclosed, and had earlier foreclosed, *Fong Yue Ting*, 149 U.S at 724)) that those residing in the country while being prohibited from doing so were within the allegiance and protection of the United States, or the possibility that one could be outside of the nation's allegiance and protection but still owe it "direct and immediate allegiance," as required for being subject to its jurisdiction.

The Court's proviso requiring permission to reside is clearly part of its holding, not dicta, because that proviso was part of the rule of law the Court stated and applied when considering the particular facts of the case. *See, e.g.*, Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1065 (2005) (defining a holding as consisting of "those propositions along the chosen decisional path or paths of reasoning that (1) are actually decided, (2) are based upon

7

the facts of the case, and (3) lead to the judgment"). These facts were that Wong Kim Ark's parents were not merely resident aliens, but Chinese subjects residing in the United States at a time when some Chinese, uniquely among nationalities, were excluded from the country. The Court's rule that aliens residing in this country, provided that they had permission to do so, were subject to its jurisdiction was based on these facts, and that rule entails the Court's judgment that Wong Kim Ark was born a citizen. *See Wong Kim Ark*, 169 U.S. at 705 ("*For the reasons above stated*, this court is of opinion that the question [of whether a person with Wong Kim Ark's particular birth and parentage was a citizen] must be answered in the affirmative.") (emphasis added).

And, of course, the Supreme Court may set forth a standard as part of its holding in a case even when the Court finds that the standard has been met in that case. For example, in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court held that a federal court hearing habeas corpus must consider whether there was legally sufficient evidence to support a conviction, not just whether there was some evidence, even though it found that the prosecution had met the former, higher standard. Likewise, *Wong Kim Ark* did not leave open the question of whether those born in this country to persons who did *not* lawfully reside in the country were birthright citizens merely because it was undisputed that Wong Kim Ark's parents lawfully resided here. Rather, the standard the Court announced and applied was part of its holding, even though Wong Kim Ark met that standard. Any view of "holding" that is more restrictive, at least if applied to the Supreme Court, would rob the Court of its ability to set forth general principles of law to guide lower courts in any case where the general principle it discerned, and relied on to reach its judgment, happened to be met. *See* Antonin Scalia, *ESSAY: The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175 (1989) (arguing for the desirability of the Supreme Court's deciding cases using broad rules, in order to bind lower courts and itself).

Of course, Plaintiff's reading of *Wong Kim Ark*, in which the holding of the case was that (outside of listed exceptions) all resident aliens, with or without permission to reside here, are subject to the jurisdiction of the United States, *Wong Kim Ark*, 169 U.S. at 693-94, also entails the Court's judgment. But that rule contradicts the Court's statement that Chinese aliens residing here, provided they had permission to do so, were subject to the jurisdiction, because this latter statement implies that Chinese aliens residing here without permission were not subject to the jurisdiction, whereas Plaintiff's rule implies that they were so subject. The contradiction can only be resolved by reading the permission-to-reside requirement as a proviso to the Court's earlier statements about resident aliens in general, so that the rule of *Wong Kim Ark*, stated in full, is that (outside of listed exceptions) resident aliens, so long as—that is, if and only if—they have permission to reside here, are subject to the jurisdiction of the United States.

It is true that the Court in *Wong Kim Ark* stated, in dicta, that "jurisdiction" had a unitary meaning in the Fourteenth Amendment. 169 U.S. at 687. It is also true that "jurisdiction" for purposes of the Equal Protection Clause of that amendment was later held to be merely geographical. *Plyler v. Doe*, 457 U.S. 202, 215 (1982). But that is far from enough for this Court to conclude that the *Plyler* holding alters *Wong Kim Ark*'s holding—with which it is fully consistent—about the meaning of "subject to the jurisdiction thereof" in the Citizenship Clause. *A fortiori, Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

9

**II.     Plaintiff's facial challenge is without merit.**

It follows from *Wong Kim Ark* that the EO has innumerable valid applications, including to children born to illegal aliens, tourists, and others who do not have permission to reside in the United States. Plaintiff therefore cannot succeed on the merits of their facial challenge. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *see also AFSCME Council 79 v. Scott*, 717 F.3d 851, 857-858 (11th Cir. 2013) (applying the rule of *Salerno* to a facial challenge to an executive order). In light of *Wong Kim Ark*'s holding that, to have birthright citizenship under the Fourteenth Amendment, one's parents must have been permitted to reside in the United States at one's birth, the EO is far from invalid on its face.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or in the alternative for summary judgment should be granted.

Dated: June 24, 2025                         Respectfully submitted,

                                             s/ Christopher J. Hajec
                                             CHRISTOPHER J. HAJEC
                                             D.C. Bar No. 492551
                                             MATT A. CRAPO
                                             D.C. Bar No. 473355
                                             GABRIEL CANAAN
                                             D.C. Bar No. 90025172
                                             Immigration Reform Law Institute
                                             25 Massachusetts Ave., NW, Ste 335
                                             Washington, DC 20001
                                             (202) 232-5590
                                             chajec@irli.org

                                             Counsel for *Amicus Curiae*
                                             Immigration Reform Law Institute

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the page limitation in D.D.C. LCvR 7(o)(4) because it contains fewer than 25 pages. I further certify that it complies with the typeface and style requirements D.D.C. LCvR 5.1(d) because it has been prepared in a proportionally spaced typeface using 12-point Times New Roman.

DATED: June 24, 2025                             Respectfully submitted,

                                                 s/ Christopher J. Hajec