# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OCA – ASIAN PACIFIC AMERICAN ADVOCATES and JANE DOE #1, BABY DOE #1, and JANE DOE #2, <br><br> *Plaintiffs*, <br><br> v. <br><br> MARCO RUBIO, U.S. Secretary of State, in his official capacity; U.S. DEPARTMENT OF STATE; JAMES McHENRY, Acting Attorney General, in his official capacity; U.S. DEPARTMENT OF JUSTICE, KRISTI NOEM, Secretary of Homeland Security, in her official capacity, U.S. DEPARTMENT OF HOMELAND SECURITY; FRANK BISIGNANO, Commissioner of the Social Security Administration, in her official capacity; U.S. SOCIAL SECURITY ADMINISTRATION; and DONALD J. TRUMP, President of the United States, in his official capacity, <br><br> *Defendants*. | Civil Action No. 1:25-cv-00287 (TJK) |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF SUPPLEMENTAL MOTION TO PROCEED PSEUDONYMOUSLY

Plaintiffs OCA – Asian Pacific American Advocates ("OCA"), Jane Doe #1, Baby Doe #1, and Jane Doe #2 move this Court for an order permitting "Member B" (a member of OCA) to proceed pseudonymously as a witness because of substantial fear of retaliation against him and his family. Specifically, Plaintiffs seek an order permitting Member B to proceed under pseudonym for the purposes of his participation in this litigation, which would afford him the same protections this Court has already granted to Jane Doe #1, Baby Doe #1, and Jane Doe #2 in its previous order

on Plaintiffs' Motion to Proceed Pseudonymously.[1]  Member B and his family face real danger of retaliation, not only from the United States government, but also from members of the public, and therefore Plaintiffs seek an order from this Court to protect Member B's identity as this litigation proceeds.

## STATEMENT OF FACTS

Member B is a native of a foreign country who now resides in the United States lawfully with an "H1B" visa.[2]  Member B's wife has an "H4" derivative visa.  Member B Decl. ¶ 4. Member B's wife is currently pregnant with their first child (of whom Member B is the father); they are planning to have the child in the United States, and the child of Member B and his wife would be denied birthright citizenship under President Trump's Executive Order "Protecting the Meaning and Value of American Citizenship" (the "Executive Order" or the "Order"), if it were to take effect.  *See id.*[3]  Member B fears that the U.S. government, his employer, members of the public, and, potentially, the Chinese government could retaliate against him, his wife, or their future child because of their participation in this lawsuit due to the sensitive nature of the issues at play in this case.  Member B Decl. ¶¶ 8-13. Other cases raising these same issues have been highly publicized.[4]  Member B fears that if this case receives similar publicity and he is associated with the case, he and his family could be subjected to harassment by the U.S. government, the Chinese government, Member B's employer, members of Member B's immediate community, and

---

[1] Minute Order dated July 2, 2025 (granting ECF 28).

[2] *See* Member B Decl. ¶ 3 (attached as Exhibit A).

[3] *See also* Exec. Order No. 14,160, 90 Fed. Reg. 8449 (Jan. 20, 2025).

[4] *See, e.g.*, A. Marimow, *Supreme Court Grapples with Nationwide Orders Blocking Birthright Citizenship Ban*, WASH. POST (May 15, 2025), https://www.washingtonpost.com/politics/2025/05/15/birthright-citizenship-ban-supreme-court-arguments/; M. Schwartz & M. Baker, *Twenty-two States Sue to Stop Trump's Birthright Citizenship Order*, N.Y. TIMES (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/trump-birthright-citizenship.html.

members of the public generally. Member B Decl. ¶¶ 8-13. Member B fears, in particular, termination from his job, denial of his Green Card application, deportation, detention, and harassment by the Chinese government of Member B and his family—both living in the U.S. and in China. *Id.* Member B is the primary provider for his wife and unborn child, and termination from his job would cause significant hardship for him and his family. *Id.* ¶ 12. Furthermore, Member B's employer is the sponsor for his H1B visa, and without employment he would lose his visa. *Id*. ¶ 9. In addition, Member B's wife (the mother of his unborn child) is neither a U.S. citizen nor a Lawful Permanent Resident ("LPR"). *Id.* ¶ 4. Member B is concerned that Defendants will target his wife with immigration enforcement in retaliation for his participation in this litigation. *Id.* ¶ 8-9. Member B also fears that if his unborn daughter's identity becomes publicized because of Member B's participation in this litigation, upon her birth, Member B's daughter may be subjected to harassment from the U.S. government and the public generally. *Id.* ¶ 13. Specifically, Member B fears that the U.S. government could target his daughter (upon her birth) by denying applications for visas or lawful permanent residency, resulting in the separation of Member B's family. *Id.*

## LEGAL STANDARDS

Courts extend protections to participants in litigation and allow them to proceed under pseudonyms when their "legitimate interest in anonymity" outweighs any "countervailing interests in full disclosure." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019). The court has the discretion to allow a party to participate pseudonymously in pending litigation. *See J.W. v. District of Columbia*, 318 F.R.D. 196, 198 (D.D.C. 2016). To evaluate whether a participant in the litigation has overcome the "presumption in favor of disclosure" and may proceed under a pseudonym, courts in this Circuit apply a "'flexible and fact driven' balancing test." *Doe v. Fed.*

*Republic of Germany*, 680 F. Supp. 3d 1, 4 (D.D.C. 2023) (first quoting *In re Sealed Case*, 931

F.3d at 96; and then quoting *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020)).  That test

looks to five "guideposts":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
> [3] the ages of the persons whose privacy interests are sought to be protected;
> [4] whether the action is against a governmental or private party; and, relatedly,
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*In re Sealed Case*, 931 F.3d at 97 (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993))

(brackets in original).  While the D.C. Circuit has laid out these specific factors, the list is "non-

exhaustive."  *Chang v. Republic of S. Sudan*, 548 F. Supp. 3d 34, 37 (D.D.C. 2021) (quoting *In re

Sealed Case*, 971 F.3d at 326); *see also In re Sealed Case*, 931 F.3d at 97 (cautioning that courts

"should not . . . engage in a wooden exercise of ticking the five boxes").  A participant in the

litigation also need not meet all five factors to justify proceeding anonymously.  *See, e.g.*, *Emp. #1

v. Dep't of Behav. Health*, 694 F. Supp. 3d 110, 115 (D.D.C. 2023) (permitting plaintiff to proceed

under a pseudonym even though multiple factors weighed in favor of disclosure).

## ARGUMENT

Plaintiffs move this Court for an order allowing Member B to proceed under pseudonym.

All five factors under *In re Sealed Case* support this relief for Member B.

**I.      Member B should be permitted to proceed pseudonymously under the factors in *In re Sealed Case***

### A.     Member B seeks to preserve privacy in a matter of sensitive and highly personal nature

First, Member B seeks to preserve privacy in a matter of sensitive and highly personal nature. *See In re Sealed Case*, 931 F.3d at 97. Member B fears that his participation in this lawsuit will jeopardize his and his family's ability to stay in the United States because they believe that the government could retaliate against them for his advocacy. Member B Decl. ¶¶ 8-9. Member B is in the United States on an H1B visa and his wife is not a LPR. *Id.* ¶¶ 2, 4. Member B fears his family will be targeted for immigration consequences—including denial of Green Card application, revocation of visas, and deportation—as a result of his participation in this lawsuit. Member B Decl. ¶¶ 8-9. These fears are not unfounded, given several recent examples of apparent targeting of individuals by immigration officials after the individuals allegedly spoke out against the government.[5] These fears are further exacerbated by the recent instances across the country of immigration officials arresting, detaining, and expediting deportation of individuals simply for appearing at court hearings.[6] This Court would join other federal courts in recognizing that

---

[5] *See, e.g.*, J. Bromwich, *Mahmoud Khalil's Wife Gives Birth as ICE Bars Him From Being There*, N.Y. TIMES (Apr. 21, 2025), https://www.nytimes.com/2025/04/21/nyregion/mahmoud-khalil-denied-baby-birth.html; S. Otterman & A. Ley, *Columbia Activist Arrested by ICE at His Appointment for Citizenship*, N.Y. TIMES (Apr. 14, 2025), https://www.nytimes.com/2025/04/14/nyregion/columbia-student-palestinian-arrested-ice.html; K. Tsui, *What we know about the federal detention of activists, students and scholars connected to universities*, CNN (Apr. 2, 2025), https://www.cnn.com/2025/03/31/us/what-we-know-college-activists-immigration-hnk (listing eleven examples of potential targeting of foreign students and faculty by the federal government); S. Saul, *ICE Tells a Cornell Activist to Turn Himself In*, N.Y. TIMES, (Mar. 21, 2025), https://www.nytimes.com/2025/03/21/us/politics/trump-cornell-student-ice.html; M. Boorstein, *Activist Who Took Sanctuary in Church During First Trump Term is Detained*, WASH. POST (Mar. 19, 2025), https://www.washingtonpost.com/nation/2025/03/18/jeanette-vizguerra-colorado-immigrant-activist/.
[6] *See, e.g.*, M. Bellisle, et. al, *Immigration officers intensify arrests in courthouse hallways on a fast track to deportation*, ASSOC. PRESS (June 11, 2025), https://apnews.com/article/immigration-court-arrests-ice-deportation-99d822cdc93ae7dc26026c27895d5ea1; X. Bustillo, *ICE's novel*

Member B and individuals like him reasonably and legitimately fear retaliation by the government as a result of their participation in litigation challenging government action in the area of immigration.[7]

Courts in this Circuit have recognized that concerns about immigration status, deportation, and ability to remain in the United States are quintessential matters of highly sensitive and personal nature, and have allowed plaintiffs to proceed pseudonymously in similar circumstances. *See, e.g., Las Americas Immigrant Advoc. Ctr. v. Wolf*, No. 19-cv-3640 (KBJ), 2020 WL 7319297, at *3 (D.D.C. July 8, 2020) (permitting pseudonymity and noting highly sensitive and personal nature of case where plaintiffs feared removal from the U.S. and were the parents of minors); *M.M.V. v. Barr,* No. 19-CV-2773, 2019 WL 10890338, at *2 (D.D.C. Sept. 26, 2019) (permitting pseudonymity and noting "significant privacy interests" where plaintiffs feared deportation and retaliatory harm); *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1063 (9th Cir. 2000) (permitting plaintiffs to proceed pseudonymously where they "fear[ed] […] immediate deportation to China or their country of origin" if their true identity were to be revealed).

---

*strategy allows for more arrests from inside immigration courts*, NPR (June 12, 2025), https://www.npr.org/2025/06/12/nx-s1-5409403/trump-immigration-courts-arrests; S. Rosenthal, *ICE arrests 10 people in Sterling Immigration Court*, WUSA9 (June 12, 2025), https://www.wusa9.com/article/news/dmv-immigration/ice-arrests-10-people-sterling-immigration-court-virginia/65-680c6415-6583-4d6a-9b54-fc56ad4c6f59.

[7] During the previous Trump administration, the Second Circuit held that immigrant rights activist Ravidath Ragbir had stated a claim under the First Amendment against the government (in that case, Immigration and Customs Enforcement) based on allegations that it had selectively enforced a deportation order against him in retaliation for his outspokenness against the government's immigration policies. *Ragbir v. Homan*, 923 F.3d 53, 57, 71 (2d Cir. 2019) ("A plausible, clear inference is drawn that Ragbir's public expression of his criticism, and its prominence, played a significant role in the recent attempts to remove him."), *vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020).

Accordingly, this factor weighs in favor of permitting Member B to proceed under pseudonym in this matter.

### B.    Identification poses substantial concerns of retaliatory physical or mental harm for Member B and his family.

Member B should be granted anonymity in this case because of fear of retaliatory physical and mental harm not only to himself, but also his family members—innocent non-parties to this litigation. *See, e.g.*, *In re Sealed Case*, 931 F.3d at 97 (noting that "risk of retaliatory physical or mental harm to the requesting party *or even more critically, to innocent non-parties*" can justify pseudonymity (emphasis added)); *I.A. v. Barr*, No. 1:19-CV-02530, 2019 WL 3945577, at *2 (D.D.C. Aug. 21, 2019) (maintaining plaintiffs' anonymity where disclosure of participation in lawsuit could place plaintiff and their families at risk of future harm). As articulated above, Member B—a non-party to this litigation—fears physical harm from the U.S. government in the form of detention or deportation, as well as targeting of his family by the Chinese government, if Member B is identified as a participant in this litigation. *See* Member B Decl. ¶¶ 8-13.

This fear of retaliation from the government affects not only Member B but also his family members—all of whom are non-parties to this case. For example, Member B fears that the U.S. government could strip his wife of her H4 derivative visa and deport her, and that the Chinese government could target her while she is traveling to visit family in China. *Id.* ¶¶ 8, 11, 12. Further, other members of Member B's family still live in China, and Member B fears for their safety if he is identified by the Chinese government as participating in this lawsuit and seeking to stay permanently in the United States. *Id.* ¶ 12.

For all these reasons, this factor additionally weighs in favor of permitting Member B to proceed under pseudonym. *See, e.g.*, *I.A. v. Barr*, 2019 WL 3945577, at *2 (permitting anonymity in light of fear of future harm).

### C.    Member B seeks to proceed pseudonymously to protect the privacy interests of himself and his minor children.

Member B also seeks to proceed pseudonymously in light of the age of the persons whose privacy interests he seeks to protect. *In re Sealed Case*, 931 F.3d at 97.  Member B seeks to protect the privacy interests of his non-party unborn child, a factor that weighs particularly strongly in favor of pseudonymity. *See Las Americas Immigrant Advoc. Ctr. v. Wolf*, No. 19-cv-3640 (KBJ), 2020 WL 7319297 (D.D.C. July 8, 2020) at *3 (noting need to protect identity of adult plaintiff where could jeopardize privacy interest of child).  The Federal Rules recognize the unique privacy interests of minors and provide special protection against the disclosure of the names of children. Fed. R. Civ. P. 5.2(a).  Member B's participation in this lawsuit could expose the identity of his unborn child and subject her to retaliation and harassment by the U.S. government, Chinese government, and members of the public.  *See J.W.*, 318 F.R.D. at 199 (noting that "a parent's identity, if disclosed, could jeopardize the child's confidentiality").  Member B fears that his participation in this lawsuit will reveal sensitive and private information about his unborn child, including information about his child's uncertain immigration status, subjecting her to the risk of retaliation and harm. *See* Member B Decl. ¶ 13.

Accordingly, this factor also weighs in favor of permitting Member B to proceed under pseudonym.  *See, e.g., M.M.V. v. Barr*, No. 19-CV-2773, 2019 WL 10890338, at *2 (D.D.C. Sept. 26, 2019) (allowing parents to proceed pseudonymously where revealing parents' names would risk identifying their minor children); *Eley v. D.C.*, No. 16-CV-806 (BAH/GMH), 2016 WL 6267951, at *2 (D.D.C. Oct. 25, 2016) (granting anonymity where parents and their minor children are mentioned in the same filings because "the child's privacy interests and those of his or her parents or guardians are intractably intertwined") (cleaned up); *O.M.G. v. Wolf*, No. 20-CV-786

(UNA), 2020 WL 12956895, at *1 (D.D.C. Mar. 23, 2020) (allowing parents to proceed pseudonymously where doing so will aid in protecting the anonymity of their minor children).

### D. Member B should be permitted to proceed anonymously because this Action is against government parties.

The fact that the Defendants are government agencies and officers also weighs in favor of pseudonymity. Generally, "[c]ourts have concluded that anonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing." *J.W.*, 318 F.R.D. at 201 (internal quotation omitted). This is particularly true "in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." *Int'l Refugee Assistance Project (IRAP) v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *2 (D. Md. Mar. 1, 2017). "Use of pseudonyms is more likely to be appropriate in cases challenging government activity because there is both arguably a public interest in a vindication of rights and a risk of stigmatization of the plaintiff, who often represents a minority interest." *Id.* at *3 (cleaned up). That is entirely true here. Member B represents minority interests as a father of an unborn child of uncertain citizenship status who risks retaliation and stigmatization for his participation in this suit. *See* Member B Decl. ¶¶ 2, 13. And Plaintiffs challenge an Executive Order, bringing claims only against government defendants, to vindicate the rights of Member B and the pseudonymous plaintiffs, the rights of their children, and the rights of other similarly situated individuals. The fourth factor therefore supports granting the motion to proceed under pseudonym.

### E. There is no risk of unfairness to Defendants if the Court allows Member B to proceed pseudonymously.

Allowing Member B to proceed under pseudonym would also pose no risk of unfairness or prejudice to Defendants, satisfying the fifth factor. Plaintiffs' claims are legal ones: that

President Trump's Executive Order "Protecting the Meaning and Value of American Citizenship" violates both the Constitution and federal statute. Defendants do not need to know Member B's identity in order to address the legal arguments. *See Campbell v. U.S. Dep't of Agric.*, 515 F. Supp. 1239, 1246 (holding that Doe plaintiffs need not divulge their identities in a suit seeking declaratory and injunctive relief that would affect all social security disability recipients under the Food Stamp Act); *Lozano v. City of Hazelton*, 496 F. Supp. 2d 477, 512 (M.D. Pa. 2007) (allowing immigrant plaintiffs to remain anonymous to both the public and to the defendant, holding that the defendant had "less interest in the identity of the particular plaintiffs than in the resolution of the legal issues in this case"). Accordingly this factor additionally weighs in favor of granting the supplemental motion to proceed pseudonymously.

> **F.  The public interest weighs in favor of granting the motion to proceed pseudonymously.**

Finally, while there is a "general public interest in the openness of processes," including in judicial proceedings, here, that interest is "substantially outweighed by the privacy threats that ... disclosure [of Member B's identity] would engender." *Las Americas Immigrant Advoc. Ctr.*, 2020 WL 7319297, at *2, 4. The purely legal nature of the case means that the public has "an atypically weak" interest in knowing Member B's identity, because that information is not relevant to the ability of members of the public to understand and follow the case. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (quoting *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006)); *see also Lozano*, 496 F. Supp. 2d at 512 ("The decision in this case does not turn on judgements about the credibility of particular witnesses, but instead on an assessment of the parties' legal arguments."). Although there may be some public interest in disclosure of a participant's identity in suits against the federal government, that interest "is reduced" where "the claim is a pure legal challenge to [an] Executive Order, such that individual [participants] play

only a minor role in the litigation." *IRAP*, 2017 WL 818255, at *3.  And that interest is reduced even further in cases like this one, where "the public already has significant information about the parties . . . because there [is an] organizational plaintiff[] . . . who['s] name[] ha[s] been disclosed." *Id.*  In general, a minimal public interest in disclosure will not outweigh a significant interest in anonymity.  *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))).

    If anything, allowing Member B to proceed under a pseudonym would vindicate the public's interest in "testing the constitutionality" of the Executive Order.  *Lozano*, 496 F. Supp. 2d at 512.  "[W]here a plaintiff attacks governmental activity," and especially when he "represents a minority interest (and may be subject to stigmatization) . . . there is arguably a public interest in a vindication of his rights." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003).  Requiring Member B to disclose his identity and thereby make himself and his family possible targets for retaliation "could dissuade [litigants] from pursuing their rights in court," undermining that public interest.  *IRAP*, 2017 WL 818255, at *2.  "[W]hen the willingness to file suit is chilled by fear of retaliatory action, the public interest in seeing the suit move forward on its merits outweighs the public interest in knowing the [participants'] names." *L.H. v. Schwarzenegger*, No. CIV. S-06-2042, 2007 WL 662463, at *18 (E.D. Cal. Feb. 28, 2007).  Accordingly, the public interest in this case weighs in favor of granting anonymity to Member B.

**CONCLUSION**

For the reasons stated above, the Court should permit Member B to proceed pseudonymously. Plaintiffs respectfully asks this Court to allow Member B to proceed by pseudonym.

Dated: August 13, 2025                              Respectfully submitted,


/s/ *John A. Freedman*                              John C. Yang (D.C. Bar No. 438672)
John A. Freedman (D.C. Bar No. 453075)              Niyati Shah (D.C. Bar No. 1659560)
Sally Pei (D.C. Bar No. 1030194)                    Noah Baron (D.C. Bar No. 1048319)
Jonathan L. Stern (D.C. Bar No. 375713)             ASIAN AMERICANS
Ronald D. Lee (D.C. Bar No. 411516)                   ADVANCING JUSTICE-AAJC
ARNOLD & PORTER KAYE SCHOLER LLP                    1620 L Street, NW, Suite 1050
601 Massachusetts Avenue, N.W.                      Washington, D.C. 200036
Washington, D.C. 20001                              (202) 296-2300
(202) 942-5000                                      jcyang@advancingjustice-aajc.org
John.Freedman@arnoldporter.com                      nshah@advancingjustice-aajc.org
Sally.Pei@arnoldporter.com                          nbaron@advancingjustice-aajc.org
Jonathan.Stern@arnoldporter.com
Ronald.Lee@arnoldporter.com                         Kaitlin Banner (D.C. Bar No. 1000436)
                                                    Sarah Bessell (D.C. Bar No. 219254)
                                                    Madeleine Gates (D.C. Bar No. 90024645)
                                                    WASHINGTON LAWYERS' COMMITTEE
                                                    FOR CIVIL RIGHTS AND URBAN
                                                    AFFAIRS
                                                    700 14th Street, NW, Suite 400
                                                    Washington, D.C. 20005
                                                    (202) 319-1000
                                                    kaitlin_banner@washlaw.org
                                                    sarah_bessell@washlaw.org
                                                    madeleine_gates@washlaw.org

                                    *Counsel for Plaintiffs*