UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OCA – ASIAN PACIFIC AMERICAN
ADVOCATES, *et al.*,

    *Plaintiffs*,

    v.

MARCO RUBIO, in his official capacity as
Secretary of State, *et al.*,

    *Defendants.*

Civil Action No. 1:25-cv-00287 (TJK)

## PLAINTIFFS' COUNTER-STATEMENT OF DISPUTED FACTS

Pursuant to Federal Rule of Civil Procedure 56(c), Local Civil Rule 7(h)(1), and the Court's January 31, 2025 Standing Order (ECF 6), Plaintiffs respectfully submit this Counter-Statement of Disputed Facts in response to Defendants' Statement of Material Facts Not in Dispute (ECF 36-1).

As an overarching objection, Plaintiffs object that the Defendants' statement fails to comply with Local Rule 7(h)(1) in that it does not set forth all material facts in Defendants' motion for summary judgment, or "include references to the parts of the record relied upon to support the statement." It also fails to comply with Paragraph 12 of the January 31, 2025 Standing Order in that it does not include "specific citations to the portions of the record upon which the party relies in fashioning the statement." Defendants' statement also generally fails to comply with Paragraph 12(a) of the Standing Order's formatting requirements or its direction to limit each numbered row to one undisputed factual assertion. In addition to these objections, Plaintiffs set forth their response below.

|   | **Defendants' Contention** | **Plaintiffs' Response** |
|---|---|---|
| 1. | The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. | Admitted. |
| 2. | On January 20, 2025, President Donald J. Trump issued an Executive Order entitled: "Protecting the Meaning and Value of American Citizenship" and addressing what it means to be "subject to the jurisdiction" of the United States under the Fourteenth Amendment. See Exec. Order No. 14160, (Jan. 20, 2025). | Admitted as to "On January 20, 2025, President Donald J. Trump issued an Executive Order entitled: "Protecting the Meaning and Value of American Citizenship." Denied as to the portion of the contention "addressing what it means to be 'subject to the jurisdiction' of the United States under the Fourteenth Amendment." That contention cannot be presented in a form that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Moreover, the Executive Order does not address or establish "what it means to be subject to the jurisdiction of the United States." As detailed in the Declaration of Dr. Beth Lew-Williams, the Executive Order departs from the well-accepted understanding of what the Fourteenth Amendment means when it uses the phrase "subject to the jurisdiction." Lew-Williams Decl. ¶¶9-16, 22-29-42. |
| 3. | That Executive Order recognizes that the Constitution does not grant birthright citizenship to the children of aliens who are unlawfully present in the United States as well as children of aliens whose presence is lawful but temporary. *Id*. | Denied. This is a legal conclusion or, in the alternative, cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the materials cited do not establish facts supporting the conclusion that "the Constitution does not grant birthright |

2

|   |   | citizenship to the children of aliens who are unlawfully present in the United States as well as children of aliens whose presence is lawful but temporary." As detailed in the Declaration of Dr. Beth Lew-Williams, the Executive Order departs from the well-accepted understanding of birthright citizenship, which was intended to extend citizenship to children born in the United States regardless of their parentage. Lew-Williams Decl. ¶¶9-16, 22-50. |
|---|---|---|
| 4. | Section 2(a) of the Executive Order directs the Executive Branch: (1) not to issue documents recognizing U.S. citizenship to persons born in the United States under the conditions described in section 1, and (2) not to accept documents issued by state, local, or other governments purporting to recognize the U.S. citizenship of such persons. The EO specifies, however, that those directives "apply only to persons who are born within the United States after 30 days from the date of this order," or February 19. Id. § 2(b). The Citizenship EO makes clear that its provisions do not "affect the entitlement of other individuals, including children of lawful permanent residents, to obtain documentation of their United States citizenship." Id. § 2(c). | Admitted. |
| 5. | The EO directs the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Commissioner of Social Security to take "all appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with this order," and not to | Admitted that the Executive Order directs the heads of all federal agencies to issue public guidance within 30 days (by February 19) "regarding this order's implementation with respect to their operations and activities." Freedman Decl. Ex. 1 § 3(b).1. |

3

|   |   |   |
|---|---|---|
|   | "act, or forbear from acting, in any manner inconsistent with this order." Id. § 3(a). It further directs the heads of all federal agencies to issue public guidance within 30 days (by February 19) "regarding this order's implementation with respect to their operations and activities." Id. § 3(b).1. | Denied as to the first sentence, which misquotes the Executive Order as to who is directed not to "act, or forebear from acting in any manner inconsistent with this order." *See* Freedman Decl. Ex. 1 § 3(a). |
| 6. |   | <u>Defendants' Contention</u>: "Senator Lyman Trumbull explained the purpose of the Act was to "make citizens of everybody born in the United States who owe[d] allegiance to the United States" and "went on to equate 'being subject to our jurisdiction' with 'owing allegiance solely to the United States," ECF 36 at 24.<br><br>Denied: Senator Lyman Trumbull's statement during debate over the Civil Rights Act of 1866 that citizenship is extended to people "owing allegiance to the United States" was immediately followed by the statement: "We cannot make a citizen of the child of a foreign minister who is temporarily residing here" because they do not "owe allegiance. . . ." Lew-Williams Decl. ¶24. |
| 7. |   | <u>Defendants' Contention</u>: "Congressional debates over the . . . Fourteenth Amendment also confirm that children born in the United States to non-resident noncitizens lack a right to U.S. citizenship because they are not subject to U.S. jurisdiction. For instance, Representative James Wilson . . . recognized "exceptions" to that general rule for "children born on our soil to temporary sojourners or representatives of foreign governments." ECF 36 at 28.<br><br>Denied. Representative James Wilson's statement that "children born on our soil to |

4

| | | |
|---|---|---|
| | | temporary sojourners" are not "natural born citizens" was made during the debate over the Civil Rights Act of 1866, not the debate over the Fourteenth Amendment. Lew-Williams Decl. ¶40. Neither Representative Wilson nor any other legislator made a statement during the Fourteenth Amendment Citizenship Clause ratification debate that the children of "sojourners" would not be citizens. Lew-Williams Dec. ¶¶38, 40-41. There were no comparable statements made during the debate over the Fourteenth Amendment. Lew-Williams Decl. ¶¶37-42. |
| 8. | | <u>Defendants' Contention</u>: "Representative James Wilson explained . . . that, under "the general law relating to subjects and citizens recognized by all nations,"" there are "exceptions" to that general rule for "children born on our soil to temporary sojourners or representatives of foreign governments." ECF 36 at 28.<br><br>Denied. Representative Wilson's extended speech in which he referenced "sojourners" concerned his view that Black people could be citizens under the original constitution, refuting the conclusion of the *Dred Scott* decision; in this context, he observed that the Constitution did not define "citizen" and speculated that "it may be" the case in international law ("general law"), rather than the law of the United States, that children of "sojourners" were not citizens. Lew Williams Decl. ¶40. |
| 9. | | <u>Defendants' Contention</u>: "Representative James Wilson explained . . . that, under "the general law relating to subjects and citizens recognized by all nations,"" there are "exceptions" to that general rule for "children born on our soil to temporary |

5

|     |     |     |
| --- | --- | --- |
|     |     | sojourners or representatives of foreign governments." ECF 36 at 28.<br><br>Denied. Each of the "general law" sources Representative Wilson cited in his speech—former Attorney General Bates, William Rawle, and Sir William Blackstone—recognized that citizenship would extend to the children of "aliens." Lew-Williams Dec. ¶40. |
| 10. |     | Defendants' Contention: The Citizenship Clause "uses the term "reside[nce] synonymously with "domicile." ECF 36 at 24.<br><br>Denied. The term "residence" and "domicile" had different meanings at the time of the Fourteenth Amendment's ratification. Lew-Williams Supp. Decl. ¶13. *See also* Freedman Decl. 4 & Ex. 2 (definition of *Residence,* A Law Dictionary: Adapted to the Constitution and Laws of the United States of America (ed. John Bouvier 1860). |
| 11. |     | Defendants' Contention: The Citizenship Clause "makes clear that citizenship flows from lawful domicile." ECF 36 at 24.<br><br>Denied: The Citizenship Clause contains no reference to "domicile" at all. Lew-Williams Supp. Decl. ¶11. The Citizenship Clause does not state any residence requirements for parents at all. Lew-Williams Supp. Decl. ¶12. After the adoption of the Fourteenth Amendment, in 1874 a legislative bill by Ebenezer Hoar proposed to add a domicile requirement; this proposal failed, and underscores the fact that no such requirement was in operation under the Fourteenth Amendment. Lew-Williams Supp. Decl. |

| | | | |
|---|---|---|---|
| | | | ¶16. As part of the 1874 debate over the Hoar bill, Representative Robert S. Hale explained the bill would change "existing law" which was described as "The general rule is that every person born within a sovereignty is by birth the subject of that sovereignty. That is the recognized rule within the United States; it is specifically provided for in the constitutions of many of the States, and by the fourteenth amendment to the Constitution of the United States. This rule has no respect to the circumstances under which the person may have been born, or the status of the parents at the time of birth; whether the father of the child born here is permanently domiciled without our borders, or is here for temporary and commercial purposes, or is a mere visitor or a casual traveler without our boundaries. If the child is born within the United States, by that birth he is a citizen of the United States." Lew-Williams Supp. Decl. ¶17. |
| 12. | | | Defendants' Contention: "[t]o be subject to the jurisdiction of the United States under the Clause, a person must owe "no allegiance to any alien power" . . . a person owes a form of "allegiance" to the country in which he is "domiciled." ECF No. 36 at 24-25.<br><br>Denied: At the time of ratification of the Fourteenth Amendment, the term "allegiance" generally referred to a duty to comply with, and enjoyment of the protection of, the law. See Lew-Williams Decl. ¶¶33-34, 41. Moreover, at the time of the adoption of the Fourteenth Amendment, American jurists recognized that anyone who "resides" in a nation owes a form of allegiance to that nation. Lew-Williams Supp. Decl. ¶ 14 (citing Webster's 1828 |

| | | | |
|---|---|---|---|
| | | | dictionary ("Local allegiance," was a duty "due from an alien to the government or state in which he resides") and an 1860 law dictionary ("in the United States, during the residence of aliens amongst us, they owe a local allegiance, and are equally bound with natives to obey all general laws for the maintenance of peace and the preservation of order….")). |
| 13. | | | Defendants' Contention: "noncitizens . . . are not domiciled here but in foreign countries . . . noncitizens formally retain their foreign domiciles. . . . a person owes a form of "allegiance" to the country in which he is "domiciled." ECF 36 at 26.<br><br>Denied: At the time of ratification of the Fourteenth Amendment, all aliens in the United States (other than diplomats and their families), including temporary visitors, were understood to owe "allegiance" to the United States. Lew-Williams Decl. ¶¶33-34 (discussing *Schooner Exchange*, 11 U.S. at 144); Freedman Decl. ¶5 & Ex. 3. |
| 14. | | | Defendants' Contention: "A child born of foreign parents other than lawful permanent residents is domiciled in, and owes primary allegiance to, his parents' home country . . . such a child is not subject to the jurisdiction of the United States. . . . those children owe primary allegiance to the countries of their parents' nationalities." ECF No. 36 at 25-26.<br><br>Denied: At the time of ratification of the Fourteenth Amendment, it was generally understood that birth within the United States created "allegiance." Lew-Williams Decl. ¶¶13-14, 33-34; Freedman Decl. ¶¶6-7 & Ex. 4 (Archibald Brown, *A Law Dictionary for the Use of Students and* |

| | | |
|---|---|---|
| | | *the Legal Profession* 20-21 (1875) & Ex. 5 (Cong. Globe, 39th Cong., 1st Sess. 1262 (1866) (statement of Rep. Broomall)). |
| 15. | | <u>Defendants' Contention</u>: The parents of *Wong Kim Ark* had a "permanent domicile and residence in the United States." ECF 36 at 34-37.<br><br>Disputed: At the time of Wong Kim Ark's birth and at the time of the Wong Kim Ark decision, Chinese immigrants were racially barred from naturalization and as a result many Chinese immigrants resided in the United States only temporarily and "assumed to be forever foreign." Lew-Williams Supp. Decl. ¶¶63-65, 71. |
| 16. | | <u>Defendants' Contention</u>: Senator Trumbull wrote to President Andrew Johnson that the Civil Rights Act "declares all persons born of parents domiciled in the United States, except untaxed Indians, to be citizens of the United States." ECF 36 at 29.<br><br>Denied. The document in question is unsigned and undated, and the cited law review article is not admissible in evidence and offers no evidence of authorship that would be admissible in evidence. Lew-Williams Supp. Decl. ¶15.<br><br>Moreover, Defendants' interpretation is inconsistent with Senator Trumbull's actual public statements during the legislative debate over the Civil Rights Act, which made clear his view that the children of aliens (other than foreign diplomats) were citizens. Lew-Williams Decl. ¶26. Moreover, President Andrew Johnson understood the Civil Rights Act of 1866 to extend citizenship to the U.S.-born children |

| | | |
|---|---|---|
| | | of all non-diplomatic aliens and cited that in his veto message. Lew-Williams Decl. ¶28. |
| 17. | | Defendants' Contention: "There is no reason to read the phrase 'subject to the jurisdiction thereof' in the [Fourteenth] Amendment as broader than the phrase "not subject to any foreign power" in the [Civil Rights] Act." ECF 36 at 23.<br><br>Denied: Following Andrew Johnson's veto of the Civil Rights Act of 1866, and the congressional override of that veto, drafters of the Citizenship Clause made changes from the Civil Rights Act to the language of the Citizenship Clause—making it even broader than that in the Civil Rights Act—as they assumed a less conciliatory attitude toward President Johnson. Lew-Williams Decl. ¶31. |
| 18. | | Defendants' Contention: The writings of international legal scholar Emmerich de Vattel are part of the "Fourteenth Amendment's historical background." ECF 36 at 27-28.<br><br>Denied: Emmerich de Vattel was a scholar of international law, but the Citizenship Clause was derived from seventeenth-century English Common Law. Lew-Williams Supp. Decl. ¶4. No members of the Thirty-Ninth Congress cited Vattel as part of the discussion of the 1866 Civil Rights Act or the Citizenship Clause of the Fourteenth Amendment. Lew-Williams Supp. Decl. ¶8. There are no indications in the congressional record that Vattel's theories of citizenship influenced Congress or reflected its intent. Lew-Williams Supp. Decl. ¶8. |
| 19. | | Defendants' Contention: "Justice Story also understood that birthright citizenship required more than mere presence . . . he also |

| | | |
|---|---|---|
| | | wrote in a treatise 'persons, who are born in a country, are generally deemed citizens and subjects of that country. A reasonable qualification of this rule would seem to be, that it should not apply to the children of parents, who were *in itinere* in the country, or abiding there for temporary purposes, as for health, or occasional business."<br><br>Denied: Defendants' citation to Justice Story omits the key sentence following the quoted passage that "[i]t would be difficult however to assert that in the present state of public laws such a qualification is universally established," and he starts the passage with the statement that "'persons, who are born in a country, are generally deemed citizens and subjects of that country"—the opposite of what Defendants contend. Lew-Williams Supp. Decl. ¶10. |
| 20. | | <u>Defendants' Contention</u>: The writings of Justice Story regarding domicile are part of the "Fourteenth Amendment's historical background." ECF 36 at 27-28.<br><br>Denied. When Congress considered the Citizenship Clause of the Fourteenth Amendment, no member of Congress cited Justice Story or argued for a domicile requirement; indeed, Congressional debates regarding the Citizenship Clause contain no reference to "domicile" at all. Lew Williams Supp. Decl. ¶11. |
| 21. | | <u>Defendants' Contention</u>: "Contemporaneous commentators" to the Fourteenth Amendment such as William Edward Hall, opined that "the children of foreigners in transient residence are not citizens." ECF 36 at 30. |

11

| | | |
|---|---|---|
| | | Disputed. The Defendants quote the fourth edition of Hall's treatise from 1895, but prior editions (much more contemporaneous to the Fourteenth Amendment) all state "In the United States, the children of foreigners born there are American citizens." Lew Williams Supp. Decl. . ¶44 (citing William Edward Hall, *A Treatise on International Law*, first edition (Oxford: Clarendon Press, 1880)). |
| 22. | | Defendants' Contention: The 1885 opinion of Secretary of State Frederick T. Frelinghuysen supports the position that "the Citizenship Clause did not confer citizenship born in the United States to non-resident noncitizen parents." ECF 36 at 31.<br><br>Disputed: The Frelinghuysen opinion concerns actions of the subject after birth and whether they amount to a renunciation of citizenship. Lew Williams Supp. Decl. ¶¶36, 42. In the decades following the ratification of Fourteenth Amendment, the United States routinely recognized the citizenship of the children of non-diplomatic aliens who were born in the United States. Lew Williams Supp. Decl. ¶37. |

Dated: August 13, 2025																	Respectfully submitted,

/s/ John A. Freedman
John A. Freedman (D.C. Bar No. 453075)
Sally Pei (D.C. Bar No. 1030194)
Jonathan L. Stern (D.C. Bar No. 375713)
Ronald D. Lee (D.C. Bar No. 411516)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Sally.Pei@arnoldporter.com
Jonathan.Stern@arnoldporter.com
Ronald.Lee@arnoldporter.com

John C. Yang (D.C. Bar No. 438672)
Niyati Shah (D.C. Bar No. 1659560)
Noah Baron (D.C. Bar No. 1048319)
ASIAN AMERICANS
 ADVANCING JUSTICE-AAJC
1620 L Street, NW, Suite 1050
Washington, D.C. 200036
(202) 296-2300
jcyang@advancingjustice-aajc.org
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org

Kaitlin Banner (D.C. Bar No. 1000436)
Sarah Bessell (D.C. Bar No. 219254)
Madeleine Gates (D.C. Bar No. 90024645)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS
AND URBAN AFFAIRS
700 14th Street, NW, Suite 400
Washington, D.C. 20005
(202) 319-1000
kaitlin_banner@washlaw.org
sarah_bessell@washlaw.org
madeleine_gates@washlaw.org

*Counsel for Plaintiffs*