UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| OCA – ASIAN PACIFIC AMERICAN ADVOCATES, <br><br> Plaintiff, <br><br> v. <br><br> MARCO RUBIO, <br> Secretary of State, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 25-0287 (TJK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    THE EXECUTIVE ORDER IS IN ACCORD WITH THE CITIZENSHIP CLAUSE. ..... 2

    II.    OCA CONTINUES TO LACK ARTICLE III STANDING ............................................... 5

    III.    THE PRESIDENT IS NOT A PROPER PARTY .............................................................. 7

    IV.    THERE IS NO NEED FOR AN ADMINISTRATIVE RECORD HERE. ......................... 9

    V.    THE COURT SHOULD NOT ENTERTAIN CLASS CERTIFICATION ....................... 10

**CONCLUSION** ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Akbar v. Cuccinelli,*
   Civ. A. No. 18-2808, 2020 WL 1287817 (D.D.C. Mar. 18, 2020)(1) .................................. 9

*Barbara v. Trump*,
   2025 WL 1904338 (D.N.H. July 10, 2025) ...................................................................... 10

*Blakely v. Schlumberger Tech. Corp.*,
   648 F.3d 921 (8th Cir. 2011) ............................................................................................. 10

*Casa, Inc. v. Trump*,
   2025 WL 2263001 (D. Md. Aug. 7, 2025) ........................................................................ 10

*District of Columbia. In McCray v. Biden*,
   574 F. Supp. 3d 1 (D.D.C. 2021) ......................................................................................... 7

*Elk v. Wilkins*,
   112 U.S. 94 (1884) ......................................................................................................... 2, 5

*Food & Drug Admin v. Alliance for Hippocratic Med.*,
   602 U.S. 367 (2024) ....................................................................................................... 5, 6

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ........................................................................................................... 7

*Grundmann v. Trump*,
   770 F. Supp. 3d 166 (D.D.C. 2025) ................................................................................ 7, 8

*Harris v. Bessent*,
   775 F. Supp. 3d 164 (D.D.C. 2025) ................................................................................... 8

*Jenner & Block LLP v. U.S. Department of Justice,*
   --- F. Supp. 3d ----, 2025 ................................................................................................... 8

*Liu v. SEC*,
   591 U.S. 71 (2020) ............................................................................................................. 3

*Mo ex rel. Nixon v. Prudential Health Care Plan, Inc.*,
   259 F.3d 949 (8th Cir. 2001) ........................................................................................... 10

*Nishimura Ekiu v. United States*,
   142 U.S. 651 (1892) ........................................................................................................... 3

*Oceanic Navigation Co. v. Stranahan*,
   214 U.S. 320 (1909) ........................................................................................................... 3

*Roth v. Austin*,
   62 F. 4th 1114 (8th Cir. 2023) ......................................................................................... 10

*Soo v. U.S.*,
   3 F.2d 592 (2d Cir. 1924) ................................................................................................... 5

*United States v. Wong Kim Ark*,
169 U.S. 649 (1898) .......... 2, 3, 4

**Statutes**

5 U.S.C. § 706 (2)(B) and (C) .......... 9
8 U.S.C. § 1401(b) .......... 3
8 U.S.C. § 1503 .......... 1
§ 3(a) .......... 6

**Other**

Rule 7(n)(1) .......... 9
Rule 12(b)(1) .......... 9
Rule 12(b)(6) .......... 9

Defendants, by and through their attorneys, respectfully reply in support of their motion to dismiss this action or, in the alternative, for summary judgment.

## INTRODUCTION

On January 20, 2025, President Donald J. Trump issued an Executive Order addressing what it means to be "subject to the jurisdiction" of the United States. *See* Exec. Order No. 14160, "Protecting the Meaning and Value of American Citizenship" (Citizenship EO or EO). That Executive Order recognizes that the Constitution does not grant birthright citizenship to children born in the United States to mothers who are unlawfully or temporarily present aliens and fathers who are neither U.S. citizens nor lawful permanent residents. Text, history, and precedent support what common sense compels: the Constitution does not harbor a windfall clause granting American citizenship to, *inter alia*: the children of those who have circumvented (or outright defied) federal immigration laws.

Plaintiffs—one non-profit organization and three pseudonymously named individuals—filed suit ten days after the EO's issuance on January 30, 2025. But their dramatic assertions about the supposed illegality of the EO cannot substitute for Plaintiffs establishing its unconstitutionality. Plaintiffs' claims fail on threshold grounds. Specifically, as argued in Defendants' Motion, Plaintiffs lack a cognizable cause of action in their claims that the Citizenship EO is *ultra vires* under the Citizenship Clause and the Immigration and Nationality Act ("INA"), and any challenge by any individual to establish their citizenship status is properly channeled under 8 U.S.C. § 1503 and not this lawsuit.[1]

---

[1] Defendants are incorporating their *ultra vires* and 8 U.S.C. § 1503 arguments set forth in their Motion herein.

## ARGUMENT

**I.     THE EXECUTIVE ORDER IS IN ACCORD WITH THE CITIZENSHIP CLAUSE.**

From the time of its enactment, the Citizenship Clause's use of the phrase "subject to the jurisdiction" of the United States contemplates something more than being subject to this country's regulatory power.  It conveys that persons must be "completely subject to [the] political jurisdiction" of the United States, *i.e.*, that they have a "direct and immediate allegiance" to this country, unqualified by an allegiance to any other foreign power. *Elk v. Wilkins*, 112 U.S. 94, 102 (1884).  Just as that does not hold for children of diplomats or occupying enemies, it similarly does not hold for children of foreigners admitted temporarily or individuals here illegally.

Although Plaintiffs contend that the Citizenship EO upends well-settled law, it is their maximalist reading which runs headlong into existing law.  Not only is it inconsistent with the Supreme Court's holding in *Elk* that the children of Tribal Indians did not fall within the Clause, even though they were subject to the regulatory power of the United States, *id*. at 101-02, but it would render the Civil Rights Act of 1866 (which defined citizenship to cover those born in the United States, not "subject to any foreign power") unconstitutional just two years after it was passed.  But the Citizenship Clause was an effort to *constitutionalize* the Civil Rights Act.  Plaintiffs rely heavily on the Supreme Court's decision in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898).  The Court, however, was careful to cabin its actual holding to the children of those with a "permanent domicile and residence in the United States." *Id*. at 652-53.  Reading that decision to leave open the question presented here is consistent with contemporary accounts, prior practices of the political branches, and Supreme Court decisions in the years following *Wong Kim Ark*.  Thus, the Court should dismiss this case and grant summary judgment.

As Defendants have stated, as a "sovereign nation," the United States has the constitutional power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). "[O]ver no conceivable subject" is federal power "more complete" than it is over the admission of aliens. *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909). Interpreting the Constitution to require the extension of birthright citizenship to the children of aliens with no legal presence directly undermines that power by holding out a powerful incentive for illegal entry. Contrary to the principle that no wrongdoer should "profit out of his own wrong," *Liu v. SEC*, 591 U.S. 71, 80 (2020) (citation omitted), it also allows foreigners to secure U.S. citizenship for their children (and, potentially, later immigration benefits for themselves) by entering the United States in violation of its laws. *See* Defs' Motion at 32-33. The Supreme Court has resisted reading the Citizenship Clause in such a broad manner.

The Supreme Court has identified multiple categories of persons who, despite being born in the United States, are not constitutionally entitled to citizenship because they were not born subject to the jurisdiction of the United States: children of foreign sovereigns or their diplomats, children of alien enemies in hostile occupation, children born on foreign public ships, and certain children of members of Indian tribes.[2] *Wong Kim Ark*, 169 U.S. at 682, 693. The EO addresses an additional category of persons not "subject to the jurisdiction" of the United States: children born in the United States of foreign parents, where the mother's presence is either unlawful or lawful but temporary at the time of the child's birth, and the father is not a U.S. citizen or a lawful

---

[2] Although the Citizenship Clause has always been understood to exclude certain children of members of Indian tribes from birthright citizenship, Congress has by statute extended U.S. citizenship to any "person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe." 8 U.S.C. § 1401(b).

3

permanent resident. Plaintiffs' contention that the EO violates the Citizenship Clause because birth within the United States automatically confers citizenship is mistaken.

Plaintiffs maintain that the question at issue here was settled in *Wong Kim Ark*. Pls. Reply and Opposition, ECF No. 40, *passim*. However, *Wong Kim Ark* addressed a different issue – whether a child born in the United States of parents who "ha[d] a permanent domicile and residence in the United States and [we]re there carrying on business" was a citizen of the United States. 169 U.S. at 705. The Court's answer in the affirmative of that question does not resolve the separate and different question presented here of whether a child born in the United States of parents who are in this country unlawfully or with only temporary permission (and therefore do not have a "permanent domicile and residence") becomes a citizen at the time of birth.

Plaintiffs mistakenly contend that United States citizenship is conferred simply by birth on United States soil and that the citizenship clause does not require parental allegiance to the United States. ECF No. 40, Pls. Reply and Opp. at 30. To the contrary, the law is clear that the focus of the inquiry under the Citizenship Clause is on the *parents*. All the exceptions to birthright citizenship that Plaintiffs acknowledge—for children of foreign sovereigns or their diplomats, children of alien enemies in hostile occupation, children born to foreigners on foreign public vessels in U.S. waters, and certain children of members of Indian tribes—turn on the parents' status and allegiance. *See id.* at 659-60 (discussing the exceptions). The focus on the parents makes sense because it is with them that the government must enter into the social compact of allegiance and protection. *See Wong Kim Ark*, 169 U.S. at 655 (discussing the fundamental principle of English common law, mutual "allegiance and protection"). Thus, the Second Circuit, in ruling in the context of a deportation proceeding whether a Chinese laborer who was born in the U.S. was a citizen, stated that "it is clear that a person of that race is a citizen of the United States if he is

4

born within this country *of parents who are subject to the jurisdiction thereof*." *Soo v. U.S.,* 3 F.2d 592, 594 (2d Cir. 1924) (emphasis added) (later referencing *Wong Kim Ark*).

Indeed, the Supreme Court in *Wong Kim Ark* recognized that the parents' lawful status in the country was integral to their child being "subject to the jurisdiction" of the United States at birth within the meaning of the Citizenship Clause:

> Chinese persons, born out of the United States, remaining subjects of the emperor of China, and not having become citizens of the United States, are entitled to the protection of and owe allegiance to the United States, *so long as they are permitted by the United States to reside here;* and are "subject to the jurisdiction thereof" in the same sense as all other aliens residing in the United States.

*Id.* at 694; *see also id.* at 660, 701-02; *Elk v. Wilkins*, 112 U.S. 94, 103 (1884) ("no one can become a citizen of a nation without its consent"). For these reasons, and as discussed in Defendants' Motion, the EO is in accord with the Citizenship Clause.

## II.   OCA CONTINUES TO LACK ARTICLE III STANDING

Organizations may "sue on their own behalf for injuries they have sustained," but must "satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin v. Alliance for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024) (quotation omitted). And an organization cannot "manufacture its own standing" simply by "expending money to gather information and advocate against the defendant's action." *Id.* at 394. Thus, simply "divert[ing] … resources in response" to government action is not sufficient for standing. *Id.* at 395.

OCA has only recently submitted yet another declaration regarding its organizational standing. *See* ECF No. 40-4, Supplemental Declaration (Supp. Decl.) of Thu Nguyen. In its supplemental declaration, OCA states that it has had to divert staff time to talk with its members about the EO and its potential effects, "which [it declares] falls outside of the typical workload and programming planned for OCA this year." *Id.*, at 3-4. OCA further states that "[t]his expenditure

5

of staff resources takes the form of informal conversations with members, such as on video or conference calls, originally convened for unrelated matters, or whenever OCA staff interact with members in person." Nguyen Supp. Decl. at 4.  OCA goes on to state that members of a particular team have had to "rededicate" their time to address issues related to the EO and that this diversion of resources has resulted in the state advocacy initiative being delayed by roughly seven months. *Id*.  Yet that is no different from the sort of diversion-of-resources harm the Supreme Court has made clear is not sufficient for standing.  *Alliance*, 602 U.S. at 394-95.  Were it otherwise, every organization that responds to a change in federal policy would have standing, and that "expansive theory" is not the law.  *Id.* at 395.  And in any event, OCA's website plainly indicates that one of the five key policy areas in 2025 is defending "Constitutional Protections" and that "OCA will fight to ensure that fundamental rights such as *citizenship*, due process, free speech, and privacy are protected." *See* https://www.ocanational.org/policy-platform.[3]  OCA can hardly contend that it is injured by doing what it set out to do as an organization.

OCA also fails to establish representational standing, as its members currently are members of a class action lawsuit.  The Executive Order, by its very terms, is not self-executing.  It instructs the Secretary of State, the Attorney General of the United States, the Secretary of Homeland Security, and the Commissioner of Social Security to take appropriate measures to ensure that the regulations and policies of their respective departments and agencies are consistent with the executive order. Executive Order § 3(a).  Although these agencies have issued guidance, none of

---

[3]     The other express policy areas are: "Safeguard Voting Rights"; "Protect Federal Programs that Serve AAPI Communities"; "Bridge the Digital Divide for Immigrant and Elder Communities"; and "Advance Health Equity and Intergenerational Care." https://www.ocanational.org/policy-platform (last accessed 8/26/2025).

the guidance has taken effect because the federal government is enjoined from enforcing the Executive Order, and as the Plaintiffs concede, there are two class actions of which they are members pending currently.

### III. THE PRESIDENT IS NOT A PROPER PARTY

The President is not considered an "agency" under the APA and contrary to Plaintiff's arguments cannot be sued directly under that statute. While courts have reviewed the legality of presidential actions for constitutional compliance, they have consistently declined to issue injunctive or declaratory relief directly against the President. Relief, if available, is typically directed at subordinate executive officials or agencies tasked with implementing presidential directives. The Supreme Court in *Franklin v. Massachusetts*, 505 U.S. 788 (1992), held that the President is not an "agency" under the APA, precluding APA-based review of presidential action. That principle remains binding and has been followed by the lower courts, including those in the District of Columbia. In *McCray v. Biden*, 574 F. Supp. 3d 1 (D.D.C. 2021), the court dismissed a complaint seeking declaratory and injunctive relief against the President. The plaintiff challenged executive orders requiring COVID-19 vaccination for federal contractors. The court held that the President's orders were discretionary and undertaken in his official capacity, and therefore not subject to APA review. Moreover, the court found that a "federal contractor lacked standing to seek an injunction or declaratory judgment against the President" and suggested that plaintiffs should instead sue subordinate officials tasked with enforcement. *Id.* at 7.

Similarly, in *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025), the court considered a challenge to the removal of a Federal Labor Relations Authority chair without cause. Although the court ruled that the removal violated statutory and constitutional separation-of-powers provisions, it did not issue relief directly against the President. Instead, it granted

declaratory and injunctive relief against the subordinate official who had replaced the plaintiff, ordering him to recognize her as a de facto member of the agency. The court noted that "it is precisely the role of an Article III court to step in when [the President] does not [abide by the law]" but directed relief only at executive officials other than the President and further stated "[a]n injunction ordering the President to reinstate [the Plaintiff] would raise complicated questions about the separation of powers." *Id.* at 175, 182.

*Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025), reached a similar result. There, the plaintiff challenged her removal from the Merit Systems Protection Board, asserting that the President acted *ultra vires* and in violation of the APA. While the court issued a declaratory judgment stating the plaintiff remained lawfully in office and could not be removed absent cause, it affirmed that injunctive relief against the President is "particularly intrusive or offensive." *Id.* at 180.

In *Jenner & Block LLP v. U.S. Department of Justice*, --- F. Supp. 3d ----, 2025 WL 1482021 (D.D.C. May 23, 2025), the court enjoined enforcement of an executive order that allegedly retaliated against the law firm for protected speech. However, the injunctive and declaratory relief was directed against federal agencies, not the President. The court found that "the order's provision directing federal agencies to terminate contracts with [the firm] violated the First Amendment," but explicitly did not enter judgment against the President. *Id.* at *6.

These cases collectively demonstrate that while federal courts may review constitutional claims involving presidential conduct, they rarely, if ever, grant relief against the President. Rather, they grant declaratory or injunctive relief against agency officials or subordinate officers implementing the disputed policy.

8

## IV. THERE IS NO NEED FOR AN ADMINISTRATIVE RECORD HERE.

Plaintiffs assert that the Defendants' Motion for Summary Judgment may not be ruled upon without an administrative record. Freedman Declaration at ¶ 15, ECF No. 30-4. This is incorrect.

The Local Civil Rules state that:

> [i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first.

Local Civ. Rule 7(n)(1). There is no requirement to file an administrative record here because Plaintiffs have filed a constitutional challenge to the Executive Order, pursuant to the APA, 5 U.S.C. § 706 (2)(B) and (C), which presents a purely legal question. *See* Am. Compl., at 59-60, ECF No. 29-1. Defendants are moving to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim and in the alternative for summary judgment on the merits of the constitutional claim.

The administrative record is unnecessary to resolve either Defendants' dispositive motion or Plaintiffs' Cross-Motion for Summary Judgment because no factual determinations related to the executive order are required to adjudicate the parties' motions. The claims may be decided on the motions alone as the Court is being asked to decide purely legal issues. Courts in this Circuit have routinely granted the Government relief from Local Civil Rule 7(n)(1) in similar circumstances on this basis. *See, e.g.*, *Akbar v. Cuccinelli*, Civ. A. No. 18-2808, 2020 WL 1287817, at *4 (D.D.C. Mar. 18, 2020) (granting Government's motion for relief from Local Civil Rule 7(n)(1) as "the Court has no need for the full administrative record," where Government had filed a motion to dismiss for lack of subject matter jurisdiction).

## V. THE COURT SHOULD NOT ENTERTAIN CLASS CERTIFICATION

Plaintiffs concede that there are two class actions currently pending in *Barbara v. Trump*, 2025 WL 1904338 (D.N.H. July 10, 2025) and *Casa, Inc. v. Trump*, 2025 WL 2263001 (D. Md. Aug. 7, 2025). Pls. Reply and Opp. at 63-64.  In *Roth v. Austin*, 62 F. 4th 1114 (8th Cir. 2023), the court held that the (Nebraska) Plaintiffs were members of a certified class in Ohio that had sought and received the same injunctive relief that they sought in the current case and therefore, their duplicative claims could not go forward.  "'"Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time.'" *Mo ex rel. Nixon v. Prudential Health Care Plan, Inc.,* 259 F.3d 949, 954 (8th Cir. 2001). Stated another way, '"a plaintiff should not be allowed to litigate the same issue at the same time in more than one federal court.'" *Blakely v. Schlumberger Tech. Corp.*, 648 F.3d 921, 932 (8th Cir. 2011)"" *Roth*, 62 F.4th at 117.

Here the class in *CASA* is the same as in *Barbara*:

> Any child who has been born or will be born in the United States after February 19, 2025, (1) whose mother was unlawfully present in the United States and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth, or (2) whose mother's presence in the United States at the time of said person's birth was lawful but temporary and whose father was not a United States citizen or lawful permanent resident at the time of said person's birth.

*Casa, Inc.*, 2025 WL 2263001 *15.  The Plaintiffs are therefore part of that class and may not pursue duplicative claims for relief in this Court.

*   *   *

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint or in the alternative grant the Defendants summary judgment.

Dated: August 27, 2025
       Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By:      */s/ Heather Graham-Oliver*
      HEATHER GRAHAM-OLIVER
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2520
      heather.graham-oliver@usdoj.gov

*Attorneys for the United States of America*